United States District Court
Northern District of West Virginia
Martinsburg Division

---

Troy McCumbee,

    *On behalf of himself and those similarly situated*,

        Plaintiff,

    v.

M Pizza, Inc.; Michael Clise; Margaret Clise; Robert Clise; Doe Corporation 1-10; John Doe 1-10,

        Defendants.

Case No.  3:22-CV-128

Judge   Groh

Jury Demand Endorsed Hereon

ELECTRONICALLY FILED
Jul 27 2022
U.S. DISTRICT COURT
Northern District of WV

---

Class and Collective Action Complaint

---

1.     Troy McCumbee, on behalf of himself and similarly situated individuals, brings this action against Defendants M Pizza, Inc.; Michael Clise; Margaret Clise; and Robert Clise ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., West Virginia wage and hour laws, and for unjust enrichment.

2.     Defendants operate several Domino's Pizza locations in West Virginia (the "Defendants' Domino's stores").

3.     Defendants also operate several Domino's Pizza locations in Maryland, Pennsylvania, and Virginia.

1

4.      Defendants repeatedly and willfully violated the Fair Labor Standards Act and West Virginia wage and hour laws by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5.      All delivery drivers at the Defendants' Domino's stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

## Jurisdiction and Venue

6.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

7.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district.

## Parties

**Plaintiff**

**Troy McCumbee**

8.      Plaintiff Troy McCumbee is a resident of West Virginia.

9.      Plaintiff is an "employee" of all the Defendants as defined by the FLSA and West Virginia wage and hour laws.

10.     Plaintiff has given written consent to join this action.

**Defendants**

11.     Defendants' Domino's stores are owned and/or operated by a number of entities and individuals, each of whom employ Plaintiff and the delivery Drivers.

12.     The Individual Defendants—Michael Clise, Margaret Clise, and Robert Clise—are the owners and operators of Defendants' Domino's stores.

13.     Some or all the Individual Defendants have entered into franchise agreements with Domino's Pizza Franchising, LLC, to operate Domino's Pizza stores.

14.     Some or all the Individual Defendants have entered into franchise agreements with Domino's Pizza Franchising, LLC, whereby the Individual Defendants agree to ensure that any Domino's stores operated pursuant to the franchise agreement will comply with all laws, including wage and hour laws.

15.     Defendants have the authority to and do hire and fire employees, supervise and control the work schedules and conditions of employees, determine the rate and method of pay, and/or maintain employee records.

16.     Defendants form a "single employer" as they are part of a single integrated enterprise and/or they are joint employers as they jointly operate a chain of Domino's Pizza franchise stores and maintain interrelated operations, centralized control of labor relations, common management, and common ownership and financial control. Because the work performed by Plaintiff and all other delivery drivers benefited all Defendants and directly or indirectly furthered their joint interests, Defendants are collectively the joint employers of Plaintiff and other similarly situated employees under the FLSA's definition of "employer."

**M Pizza, Inc.**

17.     Defendant M Pizza, Inc., is a domestic corporation with its principal place of business at 1025 Winchester Ave., Martinsburg, WV 25401.

3

18.     Upon information and belief, M Pizza, Inc., owns and operates Domino's Pizza stores in West Virginia, Maryland, Pennsylvania, and Virginia.

19.     M Pizza, Inc., is operated and incorporated by Michael Clise, Margaret Clise, and Robert Clise.

20.     M Pizza, Inc., has entered into a franchise agreement with Domino's Pizza to operate the Defendants' Domino's stores.

21.     M Pizza, Inc., is the entity that appears on Plaintiff's paystubs for work he completes for Defendants.

22.     M Pizza, Inc., may command where, when, and how much labor is performed by the delivery drivers at the Defendants' Domino's stores.

23.     M Pizza, Inc., has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

24.     Upon information and belief, M Pizza, Inc., applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

25.     M Pizza, Inc., has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

26.     At all relevant times, M Pizza, Inc., maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

27.     M Pizza, Inc., is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

28.     At all relevant times, M Pizza, Inc., has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

29.     M Pizza, Inc.'s, gross revenue exceeds $500,000 per year.

**Michael Clise**

30.     Michael Clise is the President and an Incorporator of M Pizza, Inc.

31.     Michael Clise is an individual who has entered into a franchise agreement with Domino's Pizza to operate the Defendants' Domino's stores.

32.     Michael Clise is the President and an Incorporator of Defendants' Domino's stores.

33.     Michael Clise may command where, when, and how much labor is performed by the delivery drivers at the Defendants' Domino's stores.

34.     Michael Clise is individually liable to the Defendants' Domino's stores' delivery drivers under the definitions of "employer" set forth in the FLSA and West Virginia law because he owns and operates the Defendants' Domino's stores, serves as a manager of the one or more of the Defendants' Domino's stores, ultimately controls significant aspects of the Defendants' Domino's stores' day-to-day functions, and ultimately has control of the compensation and reimbursement of employees.  29 U.S.C. § 203(d).

35.     At all relevant times, by virtue of his role as President and Incorporator Defendants' Domino's stores, Michael Clise has had financial control over the operations at each of the Defendants' Domino's stores.

36.     At all relevant times, by virtue of his role as President and Incorporator Defendants' Domino's stores, Michael Clise has a role in significant aspects of the Defendants' Domino's stores' day to day operations.

37.     At all relevant times, by virtue of his role as President and Incorporator of Defendants' Domino's stores, Michael Clise has had control over the Defendants' Domino's stores' pay policies.

38.     At all relevant times, by virtue of his role as President and Incorporator of Defendants' Domino's stores, Michael Clise has had power over personnel and payroll decisions at the Defendants' Domino's stores, including but not limited to influence of delivery driver pay.

39.     At all relevant times, by virtue of his role as President and Incorporator of the Defendants' Domino's stores, Michael Clise has had the power to hire, fire, and discipline employees, including delivery drivers at Defendants' Domino's stores.

40.     At all relevant times, by virtue of his role as President and Incorporator of Defendants' Domino's stores, Michael Clise has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Domino's stores.

41.     At all relevant times, by virtue of his role as President and Incorporator of Defendants' Domino's stores, Michael Clise has had the power to transfer the assets and liabilities of Defendants' Domino's stores.

42.     At all relevant times, by virtue of his role as President and Incorporator of Defendants' Domino's stores, Michael Clise has had the power to declare bankruptcy on behalf of Defendants' Domino's stores.

43.     At all relevant times, by virtue of his role as President and Incorporator of Defendants' Domino's stores, Michael Clise as had the power to enter contracts on behalf of each of Defendants' Domino's stores.

44.     At all relevant times, by virtue of his role as President and Incorporator of Defendants' Domino's stores, Michael Clise has had the power to close, shut down, and/or sell each of Defendants' Domino's stores.

45.     At all relevant times, by virtue of his role as President and Incorporator of Defendants' Domino's stores, Michael Clise had authority over the overall direction of each of Defendants' Domino's stores and was ultimately responsible for their operations.

46.     The Defendants' Domino's stores function for Michael Clise's profit.

47.     Michael Clise has influence over how Defendants' Domino's stores can run more profitably and efficiently.

**Margaret Clise**

48.     Margaret Clise is the Vice President, CFO, and an Incorporator of M Pizza, Inc.

49.     Margaret Clise is an individual who has entered into a franchise agreement with Domino's Pizza to operate Defendants' Domino's stores.

50.     Margaret Clise is the Vice President, CFO, and an Incorporator of Defendants' Domino's stores.

51.     Margaret Clise may command where, when, and how much labor is performed by the delivery drivers at Defendants' Domino's stores.

52.     Margaret Clise is individually liable to the Defendants' Domino's stores' delivery drivers under the definitions of "employer" set forth in the FLSA and West Virginia law because

7

she owns and operates the Defendants' Domino's stores, serves as a manager of the one or more of Defendants' Domino's stores, ultimately controls significant aspects of Defendants' Domino's stores' day-to-day functions, and ultimately has control over the compensation and reimbursement of employees.  29 U.S.C. § 203(d).

53.     At all relevant times, by virtue of her role as Vice President, CFO, and Incorporator of one or more of Defendants' Domino's stores, Margaret Clise has had financial control over the operations at each of Defendants' Domino's stores.

54.     At all relevant times, by virtue of her role as Vice President, CFO, and Incorporator of one or more of Defendants' Domino's stores, Margaret Clise has a role in significant aspects of Defendants' Domino's stores' day to day operations.

55.     At all relevant times, by virtue of her role as Vice President, CFO, and Incorporator of Defendants' Domino's stores, Margaret Clise has had control over Defendants' Domino's stores' pay policies.

56.     At all relevant times, by virtue of her role as Vice President, CFO, and Incorporator of Defendants' Domino's stores, Margaret Clise has had power over personnel and payroll decisions at Defendants' Domino's stores, including but not limited to influence of delivery driver pay.

57.     At all relevant times, by virtue of her role as Vice President, CFO, and Incorporator of Defendants' Domino's stores, Margaret Clise has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Domino's stores.

58.     At all relevant times, by virtue of her role as Vice President, CFO, and Incorporator of Defendants' Domino's stores, Margaret Clise has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Domino's stores.

59.     At all relevant times, by virtue of her role as Vice President, CFO, and Incorporator of Defendants' Domino's stores, Margaret Clise has had the power to transfer the assets and liabilities of Defendants' Domino's stores.

60.     At all relevant times, by virtue of her role as Vice President, CFO, and Incorporator of Defendants' Domino's stores, Margaret Clise has had the power to declare bankruptcy on behalf of Defendants' Domino's stores.

61.     At all relevant times, by virtue of her role as Vice President, CFO, and Incorporator of Defendants' Domino's stores, Margaret Clise as had the power to enter contracts on behalf of each of Defendants' Domino's stores.

62.     At all relevant times, by virtue of her role as Vice President, CFO, and Incorporator of Defendants' Domino's stores, Margaret Clise has had the power to close, shut down, and/or sell each of Defendants' Domino's stores.

63.     At all relevant times, by virtue of her role as Vice President, CFO, and Incorporator of Defendants' Domino's stores, Margaret Clise had authority over the overall direction of each of Defendants' Domino's stores and was ultimately responsible for their operations.

64.     The Defendants' Domino's stores function for Margaret Clise's profit.

65.     Margaret Clise has influence over how the Defendants' Domino's stores can run more profitably and efficiently.

**Robert Clise**

9

66.     Robert Clise is the Secretary and Treasurer of M Pizza, Inc.

67.     Robert Clise is an individual who has entered into a franchise agreement with Domino's Pizza to operate Defendants' Domino's stores.

68.     Robert Clise is the Secretary and Treasurer of Defendants' Domino's stores.

69.     Robert Clise may command where, when, and how much labor is performed by the delivery drivers at Defendants' Domino's stores.

70.     Robert Clise is individually liable to Defendants' Domino's stores' delivery drivers under the definitions of "employer" set forth in the FLSA and West Virginia law because he owns and operates Defendants' Domino's stores, serves as a manager of the one or more of Defendants' Domino's stores, ultimately controls significant aspects of Defendants' Domino's stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

71.     At all relevant times, by virtue of his role as Secretary and Treasurer of the one or more of Defendants' Domino's stores, Robert Clise has had financial control over the operations at each of Defendants' Domino's stores.

72.     At all relevant times, by virtue of his role as Secretary and Treasurer of one or more of Defendants' Domino's stores, Robert Clise has a role in significant aspects of Defendants' Domino's stores' day to day operations.

73.     At all relevant times, by virtue of his role as Secretary and Treasurer of Defendants' Domino's stores, Robert Clise has had control over Defendants' Domino's stores' pay policies.

10

74.     At all relevant times, by virtue of his role as Secretary and Treasurer of the Defendants' Domino's stores, Robert Clise has had power over personnel and payroll decisions at Defendants' Domino's stores, including but not limited to influence of delivery driver pay.

75.     At all relevant times, by virtue of his role as Secretary and Treasurer of Defendants' Domino's stores, Robert Clise has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Domino's stores.

76.     At all relevant times, by virtue of his role as Secretary and Treasurer of Defendants' Domino's stores, Robert Clise has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Domino's stores.

77.     At all relevant times, by virtue of his role as Secretary and Treasurer of Defendants' Domino's stores, Robert Clise has had the power to transfer the assets and liabilities of Defendants' Domino's stores.

78.     At all relevant times, by virtue of his role as Secretary and Treasurer of Defendants' Domino's stores, Robert Clise has had the power to declare bankruptcy on behalf of Defendants' Domino's stores.

79.     At all relevant times, by virtue of his role as Secretary and Treasurer of Defendants' Domino's stores, Robert Clise as had the power to enter into contracts on behalf of each of Defendants' Domino's stores.

80.     At all relevant times, by virtue of his role as Secretary and Treasurer of Defendants' Domino's stores, Robert Clise has had the power to close, shut down, and/or sell each of Defendants' Domino's stores.

81.     At all relevant times, by virtue of his role as Secretary and Treasurer of Defendants' Domino's stores, Robert Clise had authority over the overall direction of each of Defendants' Domino's stores and was ultimately responsible for their operations.

82.     The Defendants' Domino's stores function for Robert Clise's profit. Robert Clise has influence over how Defendants' Domino's stores can run more profitably and efficiently

**Doe Corporation 1-10**

83.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Domino's stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA and West Virginia wage and hour laws.

84.     Upon information and belief, Michael Clise, Margaret Clise, and Robert Clise own and/or operate, in whole or in part, a number of other entities that make up part of the Defendants' operation.

85.     Upon information and belief, the franchisor, Domino's, may also be liable as an employer of the delivery drivers employed at Defendants' Domino's stores.

86.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

87.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Domino's stores as that term is defined by the FLSA and West Virginia wage and hour laws.

12

88.     Upon information and belief, Michael Clise, Margaret Clise, and Robert Clise have entered co-owner relationships with a number of their managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Domino's stores as that term is defined by the FLSA and West Virginia wage and hour laws.

89.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Facts**

**Class-wide Factual Allegations**

90.     During all relevant times, Defendants have operated Defendants' Domino's stores.

91.     Plaintiff, and the similarly situated persons Plaintiff seeks to represent, are current and former delivery drivers at Defendants' Domino's stores.

92.     All delivery drivers employed at Defendants' Domino's stores over the last three years have had essentially the same job duties.

93.     The delivery drivers at Defendants' Domino's stores work dual jobs, one where they complete deliveries and receive tips, and another where they work inside the store and do not receive tips.

94.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside Defendants' Domino's stores folding boxes, doing dishes, stocking coolers, mopping and sweeping the floor, taking out trash, preparing food, and completing other duties as necessary inside the store.

95.     Plaintiff and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they worked delivering for Defendants' Domino's stores.

96.     Defendants require delivery drivers at Defendants' Domino's stores to provide cars to use while completing deliveries for Defendants.

97.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

98.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

99.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

100.    Plaintiff and similarly situated delivery drivers receive a per-delivery reimbursement payment that is less than the IRS standard business mileage rate.

101.    Defendants' reimbursement payments have no connection to the actual expenses incurred by the delivery drivers.

14

102.   Defendants' Domino's stores have not tracked or recorded the delivery drivers' actual expenses.

103.   Defendants' Domino's stores do not collect receipts from their delivery drivers related to the automobile expenses they incur.

104.   Defendants' Domino's stores do not collect receipts of their delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

105.   Defendants' Domino's stores do not collect receipts of their delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

106.   Defendants' Domino's stores do not collect receipts of their delivery drivers' monthly or annual automobile insurance costs.

107.   Defendants' Domino's stores do not collect receipts of their delivery drivers' automobile registration costs.

108.   Defendants' Domino's stores do not collect receipts of their delivery drivers' automobile financing or purchase costs.

109.   Defendants' Domino's stores do not collect any other receipts from their delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Domino's stores.

110.   Defendants' Domino's stores do not reimburse their delivery drivers for the actual expenses their delivery drivers incur.

111.   Defendants' Domino's stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

15

112.    Defendants' Domino's stores do not reasonably approximate their delivery drivers' expenses.

113.    Defendants' Domino's stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

114.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.    2017: 53.5 cents/mile
    b.    2018: 54.5 cents/mile
    c.    2019: 58 cents/mile
    d.    2020: 57.5 cents/mile
    e.    2021: 56 cents/mile
    f.    2022: 58.5 cents/mile

115.    The delivery drivers at Defendants' Domino's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

116.    The delivery drivers at Defendants' Domino's stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

117.    Defendants reimbursed their delivery drivers amounts less than they would have had to be pay if they had rented vehicles each day to use to make deliveries.

118.    Defendants reimbursed their delivery drivers amounts less than they would have had to pay to own and maintain a fleet of vehicles to complete their deliveries.

119.    Defendants benefit from their delivery drivers spending time off the clock repairing and maintaining their vehicles.

120.    Defendants benefit from their delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

16

121.   Defendants save substantial insurance costs and exposure to liability by requiring their judgment proof minimum wage workers to take on the risk of accident or injury for them.

122.   Plaintiff and the similarly situated delivery drivers were deprived of minimum wages guaranteed to them by the FLSA and West Virginia law as a result of the automobile and other job-related expenses they incurred while working for Defendants.

123.   Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at Defendants' Domino's stores.

124.   Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

125.   Defendants have willfully failed to pay federal and West Virginia state minimum wage to Plaintiff and similarly situated delivery drivers at Defendants' Domino's stores.

126.   Defendants have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

**Plaintiff's Individual Factual Allegations**

127.   Plaintiff has worked at the Domino's Pizza store in Spring Mills, WV owned and operated by Defendants since approximately January 2017.

128.   Plaintiff works dual jobs: one job where Plaintiff is on the road making deliveries and receiving tips, and another job when Plaintiff helps with tasks inside the store and does not receive tips.

129.   Plaintiff is nominally paid federal minimum wage for all hours worked.

17

130.     Plaintiff is paid less than West Virginia minimum wage for all hours worked.

131.     When Plaintiff is not delivering food, he works inside the restaurant. His work inside the restaurant includes doing dishes, cleaning, folding boxes, stocking the cooler, answering phones, preparing food, taking out trash, and completing other duties inside the store as necessary.

132.     Plaintiff is required to use his own car to deliver pizzas.

133.     In 2017, Plaintiff was reimbursed $1.05 per delivery.

134.     Between 2018 and April 2022 Plaintiff made between $1.60 and $1.80 per delivery.

135.     In April 2022, Plaintiff started to receive $2.20 per delivery.

136.     Plaintiff regularly drives 8 miles per round trip delivery.

137.     Plaintiff is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

138.     Plaintiff is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

139.     Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

140.     Defendants do not track the actual expenses incurred by Plaintiff.

18

141.    Defendants do not ask Plaintiff to provide receipts of the expenses he incurs while delivering pizzas for Defendants.

142.    Defendants do not reimburse Plaintiff based on his actual delivery-related expenses.

143.    Plaintiff is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

144.    Defendants do not reimburse Plaintiff based on a reasonable approximation of his expenses.

145.    Plaintiff regularly makes approximately 4 deliveries per hour during the hours he works as a delivery driver.

146.    In 2017, for example, the IRS business mileage reimbursement was $.53.5 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Based on Plaintiff's estimate of 8 miles per delivery, Defendants reimbursed Plaintiff $.131 per mile ($1.05 per delivery / 8 miles per delivery). As a result, Plaintiff estimates that Defendants under-reimbursed him by $.404 per mile ($.53.5-$.131=$.404), $3.23 per delivery ($.404 × 8 miles per delivery), and $12.92 per hour ($3.23 × 4 deliveries per hour).

147.    Defendants failed to pay Plaintiff minimum wage as required by law.

**Collective Action Allegations**

148.    Plaintiff brings the First Count on behalf of himself and:

All similarly situated current and former delivery drivers employed at Defendants' Domino's stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the

date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

149.    Plaintiff is aware that a similar case has been filed in the Federal District Court of Maryland on behalf of delivery drivers and against some of the Defendants named in this action: *Garrett, on behalf of himself and those similarly situated v. M Pizza, Inc., et al.*, Case No. 1:22-cv-01467. Through the present action, Plaintiff does not seek to represent anyone who has opted into the *Garrett* action, assuming they have opted into the Garrett action for purposes of pursuing all of the same claims they would be permitted to pursue in the present action.

150.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decisions, policies, plans, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and for failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

151.    Defendants' unlawful conduct is pursuant to company policy or practice.

152.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

153.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

154.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

155.    The FLSA Collective members are readily identifiable and ascertainable.

156.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**Class Action Allegations**

157.    Plaintiff brings the Second and Third Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Domino's stores in the State of West Virginia between the date two years prior to the filing of the original complaint and the date of final judgment in this matter ("West Virginia wage Class").

158.    Plaintiff brings the Fourth Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Domino's stores in the State of West Virginia between the five years prior to the filing of the original complaint and the date of final judgment in this matter ("Unjust Enrichment Class") (Combined with West Virginia wage Class "Rule 23 Classes")

159.    Excluded from the Rule 23 Classes are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Classes.

160.    The number and identity of the West Virginia wage Class members are ascertainable from Defendants' records.

161.    The number and identity of the Unjust Enrichment Class members are ascertainable from Defendants' records.

162.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each member of the Rule 23 Classes are determinable from Defendants' records.

163.    All of the records relevant to the claims of members of the Rule 23 Classes should be found in Defendants' records.

164.    For the purpose of notice, and other purposes related to this action, the names and contact information of the Rule 23 Classes are readily available from Defendants.

165.    Notice can be provided by means permissible under Rule 23.

166.    The members of the Rule 23 Classes are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

167.    There are more than 50 West Virginia wage Class members.

168.    There are more than 50 Unjust Enrichment Class members.

169.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Rule 23 Classes, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 Classes in separate actions.

170.    Plaintiff and the members of the Rule 23 Classes were subject to the same practices of Defendants, as alleged herein, of failing to pay minimum wage, untimely payment of wages, and being unjustly enriched by their automobile policy.

171.    Plaintiff and the West Virginia wage Class members have all sustained similar types of damages as a result of Defendants' failure to comply with West Virginia wage law.

172.    Plaintiff and the Unjust Enrichment Class members have all unjustly enriched Defendants in the same way.

173.    Plaintiff and the members of the Rule 23 Classes sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures of Defendants.

174.    Plaintiff is able to fairly and adequately protect the interests of the West Virginia wage Class and has no interests antagonistic to the West Virginia wage Class.

175.    Plaintiff is able to fairly and adequately protect the interests of the Unjust Enrichment Class and has no interests antagonistic to the Unjust Enrichment Class.

176.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

177.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

178.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

179. The West Virginia wage Class and the Unjust Enrichment Class are proper treated as subclasses pursuant to Rule 23(c)(5).

180. Common questions of law and fact exist as to the West Virginia wage Class that predominate over any questions only affecting Plaintiff and the West Virginia wage Class members individually and include, but are not limited to:

a. Whether Plaintiff and the West Virginia wage Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

b. Whether Plaintiff and the West Virginia wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

c. Whether Defendants reimbursed Plaintiff and the West Virginia wage Class members for their actual expenses;

d. Whether Defendants reimbursed Plaintiff and the West Virginia wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

e. Whether Defendants properly reimbursed Plaintiff and the West Virginia wage Class members;

f. Whether Plaintiff and the West Virginia wage Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage;

g. Whether Plaintiff and the West Virginia wage Class were actually paid the wage rate they were promised by Defendants;

h. The nature and extent of class-wide injury and the measure of damages for those injuries

181.     Common questions of law and fact exist as to the Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Unjust Enrichment Class members individually and include, but are not limited to:

a.   Whether Plaintiff and the Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

b.   Whether Plaintiff and the Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

c.   Whether Plaintiff and the Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d.   Whether Plaintiff and the Unjust Enrichment Class conferred a measurable benefit on Defendants;

e.   Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiff and the Unjust Enrichment Class providing cars to use to make deliveries;

f.   How much it would have cost Defendants to operate their business but for Plaintiff and the Unjust Enrichment Class providing cars to use to make deliveries;

g.   Whether Defendants were aware of the benefit that was being conferred on them by Plaintiff and the Unjust Enrichment Class;

h.   The nature and extent of class-wide injury and the measure of damages for those injuries.

182.     In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Classes, Plaintiff will request payment of a service award upon resolution of this action.

**Causes of Action**

**Count 1**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**

**(On Behalf of Plaintiff and the FLSA Collective)**

183.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

184.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

185.    Defendants paid Plaintiff and the FLSA Collective at or close to federal minimum wage for all hours worked.

186.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and Defendants failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

187.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

188.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

189.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages – West Virginia Code § 21-5C-1,** *et seq.*
**(On Behalf of Plaintiff and the West Virginia wage Class)**

190.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

191.    Defendants paid Plaintiff and the West Virginia wage Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

192.    Defendants failed to pay Plaintiff and the West Virginia wage class minimum wage for the hours they worked inside the store.

193.    Defendants ostensibly paid Plaintiff and the West Virginia wage Class at or close to minimum wage for the hours they worked outside the store.

194.    Because Defendants required Plaintiff and the West Virginia wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Plaintiff and the West Virginia wage Class minimum wage.

195.    Defendants are employers of Plaintiff and the Rule 23 Class as the term is defined W.V. Code § 21-5C-1(e).

196.    By not paying Plaintiff and the West Virginia wage Class at least minimum wage for each hour worked, Defendants have violated W.V. Code § 21-5C-2.

197.    As a result of Defendants' violations, Plaintiff and the West Virginia wage Class are entitled to unpaid wages, costs, reasonable attorneys' fees, and interest. *See* W.V. Code § 21-5C-8.

**Count 3**
**Wage Payment & Collection Act – W.V. Code 21-5, *et seq*.**
**(On Behalf of Plaintiff and the West Virginia wage Class)**

198.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

27

199.     During all relevant times, Defendants were employers of Plaintiff and the West Virginia wage Class.

200.     During all relevant times, Plaintiff and the West Virginia wage Class were employees of Defendants within the meaning of the Wage Payment and Collection Act (W.V. Code §21-5, *et seq.*).

201.     W.V. Code § 21-5-3 requires that Defendants pay Plaintiffs and the West Virginia wage Class wages due at least once every two weeks, unless otherwise provided by special agreement.

202.     By failing to pay Plaintiffs and the West Virginia wage Class all wages due to them under the FLSA and West Virginia law, Defendants have violated the Wage Payment and Collection Act.

203.     Plaintiffs and the West Virginia wage Class's unpaid wages and unreimbursed expenses have remained unpaid for more than two weeks after they were earned.

204.     In violating West Virginia law, Defendants acted willfully, without a good faith basis and with reckless disregard to West Virginia law.

205.     As a result of Defendants' willful violation, Plaintiffs and the West Virginia wage Class are entitled to unpaid wages, liquidated damages, costs, and attorneys' fees, as defined by the Wage Payment and Collection Act.

**Count 4**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Unjust Enrichment Class)**

206.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

207.    The Unjust Enrichment Class has conferred a benefit on Defendants by using their own cars to work for Defendants.

208.    Defendants are aware of and have accepted the benefit conferred on them by the Unjust Enrichment Class.

209.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by Plaintiff and the Unjust Enrichment Class without commensurate compensation.

210.    Plaintiff and the Unjust Enrichment Class are entitled to equitable restitution of all unreimbursed expenses, unauthorized deductions, and unpaid wages.

**WHEREFORE**, Plaintiff Troy McCumbee prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.    Designation of Plaintiff as representative of the West Virginia wage Class and the Unjust Enrichment Class and counsel of record as Class Counsel of both Rule 23 Classes.

E.    A declaratory judgment that the practices complained of herein are unlawful under the West Virginia wage and hour laws.

29

F. An award of unpaid minimum wages and unreimbursed expenses due under West Virginia wage and hour laws.

G. An award of restitution as a result of unjust enrichment to the Unjust Enrichment Class.

H. An award of prejudgment and post-judgment interest.

I. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

J. Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Kirk Auvil*
Walt Auvil (WV Bar No. 190
Kirk Auvil (WV Bar No. 12953)
The Employment Law Center PLLC
1208 Market Street
Parkersburg, WV 26101
Telephone: (304) 485-3058
Facsimile: (304) 485-6344
*auvil@theemploymentlawcenter.com*
*theemploymentlawcenter@gmail.com*

and

Andrew R. Biller *(pro hac vice forthcoming)*
Andrew P. Kimble *(pro hac vice forthcoming)*
Laura E. Farmwald *(pro hac vice forthcoming)*
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45209
Telephone: (513) 715-8712
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*

30

www.billerkimble.com

*Counsel for Plaintiff  and the putative class*

**JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ *Kirk Auvil*
Kirk Auvil